UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/27/2020

SUMMERS LABORATORIES, INC.,

                          Petitioner,

                -against-                                    19 Civ. 2754 (AT)

SHIONOGI INC.,                                              **ORDER**

                          Respondent.

ANALISA TORRES, District Judge:

Petitioner, Summers Laboratories, Inc. ("Summers"), brings this petition under the Federal

Arbitration Act (the "FAA"), 9 U.S.C. § 9, to confirm a unanimous arbitration award (the "Award")

issued on March 1, 2019, in an arbitration between Summers and Respondent, Shionogi Inc.

("Shionogi").  Petition ¶ 1, ECF No. 6.  Respondent has not paid Petitioner amounts due under the

Award relating to attorney's fees, costs, and interest.  *Id.* ¶ 21.  Accordingly, Petitioner seeks this

Court's confirmation of the Award, and the entry of judgment in favor of Petitioner and against

Respondent.  *Id.* ¶ 27.  Respondent moves to vacate the Award to the extent it awarded attorney's fees.

Resp. Opp. at 1, ECF No. 25.  For the reasons stated below, the petition to confirm the Award is

GRANTED and the motion to partially vacate the Award is DENIED.

### BACKGROUND[1]

Petitioner is a pharmaceutical product company located in Collegeville, Pennsylvania.

56.1 ¶ 2, ECF No. 25-1.  Respondent is the successor in interest to Sciele Pharma Cayman Ltd.

("Sciele Cayman") and Sciele Pharma, Inc. ("Sciele Pharma").  *Id.* ¶ 4.  On July 16, 2007, Petitioner,

Sciele Cayman, and Sciele Pharma entered into a set of "[t]ransaction [d]ocuments" to effectuate the

Asset Purchase Agreement (the "APA") between the parties.  *Id.* ¶ 7.  As part of the transaction, the

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the Petition, Petitioner's Rule 56.1
statement of undisputed fact and Respondent's response, Respondent's counter-statement of facts and Petitioner's response,
and the parties' declarations.  Facts in dispute are so noted. Citations to a paragraph in Petitioner's Rule 56.1 statement also
include Respondent's response.

parties executed: (1) the APA; (2) the bill of sale; (3) the patent and trademark assignment; and (4) the guaranty and surety agreement (the "Guaranty"); the latter three are exhibits to the APA. *Id.* ¶¶ 8–9. The APA was executed by Sciele Cayman and the Guaranty was executed by Sciele Pharma, the parent company of Sciele Cayman; both of which were later acquired by Respondent. *Id.* ¶¶ 12–13, 20–21. Through this acquisition, Respondent became the successor of Sciele Cayman, the principal of the APA, and Sciele Pharma, the guarantor under the Guaranty. Counter-Statement of Facts ¶ 65, ECF No. 27.

The APA provided for the sale of certain intellectual property and related rights by Petitioner to Sciele Cayman that would become Ulesfia, a product for the treatment of head lice. 56.1 ¶ 14. Under the APA, Sciele Cayman, and later Respondent, as successor in interest, was required to make certain payments to Petitioner upon satisfaction of specific conditions. *Id.* ¶ 15. Under the APA, Respondent is not required to make minimum payments to Petitioner under two circumstances, as defined in the APA: (1) if net sales reach or exceed certain levels or (2) if the failure to reach or exceed certain net sales levels is the result of a "market change." *Id.* ¶ 17. At issue in the arbitration were certain yearly minimum payments that were not made by Respondents. *Id.* ¶ 16.

In 2017, Respondent concluded that a market change had occurred, and therefore, that no minimum payment had been due in January 2017 for the calendar year 2016. *Id.* ¶ 24. On July 28, 2017, Petitioner submitted its demand for arbitration (the "Demand") to the American Arbitration Association (the "AAA"). *Id.* ¶ 26. Petitioner's submission included the AAA "Commercial Arbitration Rules Demand for Arbitration" form with checked boxes requesting attorney's fees, interest, and arbitration costs. *Id.* ¶ 27. Along with the Demand, Petitioner submitted a complaint requesting attorney's fees and costs, attaching a complete set of transaction documents, which included the APA and the Guaranty. *Id.* ¶ 28. Respondent filed its answer and counterclaims on August 30, 2017. *Id.* ¶ 29. Petitioner claims that in its answer, Respondent did not object to Petitioner's request

for attorney's fees; Respondent disputes this, noting that Respondent stated a general denial to all of Petitioner's claims for relief. *Id.* ¶ 31.

The APA provides that the arbitration panel will be made up of three arbitrators, one selected by Petitioner, one selected by Respondent, and one selected by mutual agreement of the arbitrators who were selected by the Petitioner and Respondent. APA § 8.5(b), ECF No. 20-6. The arbitration panel (the "Panel") included the Honorable Shira Scheindlin (Petitioner's selection), Harrie Samaras (Respondent's selection), and Edna Sussman (mutually selected).[2] *See* 56.1 ¶¶ 34–42.

The arbitration hearing was conducted in New York City from July 23 to July 27. *Id.* ¶ 66. On October 22, 2018, the Panel issued its unanimous 40-page interim award (the "First Interim Award"). *Id.* ¶ 75. The Panel concluded that no market change had occurred and, therefore, Respondent owed Petitioner the minimum payments required under the APA. *Id.* ¶ 78. The Panel elected to address certain issues, such as attorney's fees, separately. *Id.* ¶ 79. On October 22, 2018, the Panel directed the Parties to submit additional briefing relating to an award of attorney's fees and costs raised by the Guaranty. ECF No. 20-44, at 3.

Petitioner states that both the APA and the Guaranty were at issue in the Arbitration; Respondent disputes this fact and contends that only the APA was at issue. *Id.* ¶ 11. The APA provision relevant to the parties' current dispute, Section 8.5(e), provides:

> The expenses of the arbitration shall be borne by the Parties in proportion as to which each Party prevails or is defeated in arbitration. Each Party shall bear the expenses of its counsel and other experts.

APA § 8.5(e). The relevant provisions of the Guaranty, paragraphs 1 and 2, provide that Sciele Pharma (and later Shionogi), the guarantor, shall:

> irrevocably and unconditionally guarantee[] the prompt payment and performance of all debts, liabilities, obligations . . . arising under the [p]urchase [a]greement" and "shall pay or reimburse . . . all reasonable costs and expenses, including, without limitation reasonable

---

[2] Judge Scheindlin was selected after Petitioner's first selection, the Honorable James T. Giles, recused himself from the case. 56.1 ¶ 41–42.

attorney['s] fees, incurred at any time to enforce, protect, preserve, or defend [g]uaranteed [p]arty's rights hereunder.

Guaranty at 40, ECF No. 20-6; *see also* 56.1 ¶ 23.[3]

On December 26, 2018, the Panel issued its 17-page Second Interim Award, deciding to award Petitioner attorney's fees under the Guaranty. 56.1 ¶ 87. With respect to Respondent's argument that it was not on notice of Petitioner's request for attorney's fees, the Panel concluded that "[Respondent] had adequate notice of [Petitioner's] claim for attorney['s] fees and that such a claim was asserted pursuant to the Guaranty." Second Interim Award at 52, ECF No. 20-3.[4] The Panel also considered Respondent's claim that the award of attorney's fees is precluded by the APA. *Id.* at 53. The Panel determined that Respondent's "reliance on [the] language [of § 8.5(e)] is misplaced." *Id.* at 53. The Panel reasoned that:

> "Party" and "Parties," to which [§] 8.5(e) applies, are expressly defined in the APA as including only Summers, the Seller and Sciele Pharma Cayman Ltd., the Buyer and principal obligor. The obligation undertaken by the guarantor, Sciele Pharma, Inc., was a separate contractual obligation under the Guaranty. Thus [§] 8.5(e) of the APA, by its terms, does not apply to the [g]uarantor.

*Id.*; *see also* 56.1 ¶ 94.

After considering this jurisdictional issue, the Panel unanimously ruled that "[Petitioner] is entitled to reimbursement by [Respondent] pursuant to the Guaranty for all reasonable costs and expenses, including, without limitation, reasonable attorney['s] fees, incurred at any time, to enforce, protect, preserve, or defend its rights commencing with the date of the filing of the Demand, July 28, 2017." *Id.* ¶ 98 (quoting Second Interim Award at 60).

The Panel further noted that "[Petitioner's] claim was vigorously opposed in the arbitration and that this is precisely the circumstance to which the Guaranty applies and requires reimbursement of expenses, costs and attorney['s] fees to Summers by the Guarantor." *Id.* ¶ 100 (quoting Second

---

[3] Pincites to the Guaranty refer to the ECF-assigned page number.
[4] Pincites to the Second Interim Award refer to the ECF-assigned page number.

Interim Award at 51) (internal quotation marks and alterations omitted). Petitioner subsequently submitted its time records, to which Respondent raised objections, and, on March 1, 2019, the Panel awarded Summers $1,659,883 in attorney's fees and $390,103.90 in costs. *Id.* ¶ 101. Respondent has paid Petitioner "all payments due under the APA" but "has not paid . . . any amount for attorney['s] fees, and dispute[s] that any additional amounts are actually owed." *Id.* ¶ 102.

## DISCUSSION

### I.  Legal Standard

Arbitration awards are not self-enforcing; rather, they must "be given force and effect by being converted to judicial orders." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). The FAA provides that any party in an arbitration proceeding can apply for a judicial decree confirming the award, and a court must grant the award unless it vacates, modifies, or corrects the award. 9 U.S.C. § 9; *accord Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp.*, No. 15 Civ. 9040, 2016 WL 6952345, at *2 (S.D.N.Y. Nov. 28, 2016).

District courts have a "narrowly limited" role when reviewing arbitration awards. *Kobel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013). The arbitration panel's determinations are accorded "great deference" in order to achieve the goals of settling disputes efficiently and avoiding long and costly litigation. *Id.; see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great deference."). Thus, "there is no general requirement that arbitrators explain the reasons for their award." *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks and citations omitted). "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Phx. Bulk Carriers, Ltd. v.*

*Am. Metals Trading, LLP*, No. 10 Civ, 2963, 2013 WL 5863608, at *5 (S.D.N.Y. Oct. 31, 2013)

(quoting *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004)).

An action to confirm an arbitration award is generally "a summary proceeding that merely

makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d

at 110 (internal quotation marks and citation omitted). Summary judgment is appropriate when the

record shows that there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Section 10(a) of the FAA outlines the limited statutory grounds on which a federal court may

vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing,
>     upon sufficient cause shown, or in refusing to hear evidence pertinent and material
>     to the controversy; or of any other misbehavior by which the rights of any party
>     were prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a
>     mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4)). A party moving to vacate an arbitration award has the burden of proof and

the showing required to avoid confirmation is very high. *D.H. Blair & Co.*, 462 F.3d at 110.

II.    Analysis

Respondent moves to vacate the Award, pursuant to 9 U.S.C. § 10(a)(4), due to three

"[f]undamental problems" that "underlie the Panel's reliance on the Guaranty." Resp. Opp. at 2. First,

Respondent contends that claims under the Guaranty were not set forth in Petitioner's Demand and

"only claims presented in the Demand could be considered" by the Panel. *Id.* Second, Respondent

claims that § 8.5(e) of the APA, which "represents a limit to arbitral authority," precludes the award of

6

attorney's fees in arbitration. *Id.* Lastly, Respondent asserts that under New York law, a principal to a contract cannot be its own guarantor, and so the Guaranty became a legal nullity upon Respondent's assumption of both agreements. *Id.* Because an "award should be enforced . . . if there is a barely colorable justification for the outcome reached," *Phx. Bulk Carriers, Ltd.*, 2013 WL 5863608, at *5, and there is more than a "barely colorable justification" for the Award, the Court rejects Respondent's arguments which urge vacatur of the Panel's well-reasoned Award.

A. The Panel's Decision that the Guaranty was Properly Submitted at the Arbitration

In its Second Interim Award, the Panel concluded that it had jurisdiction to award fees under the Guaranty. 56.1 ¶ 97. Respondent argues, as it did before the Panel, that the Panel "went beyond the parties' pleadings by basing its award of attorney['s] fees and costs on the Guaranty, in contravention of express provisions in the APA itself." *Compare* Resp. Opp. at 15 *with* Second Interim Award at 47–48, 53. The Court disagrees.

First, the Panel's conclusion that the Guaranty was properly submitted is entitled to great deference. Procedural questions, such as whether the Guaranty was properly submitted in the arbitration, are directly within the Panel's authority. *See, e.g.*, *Town of Amherst v. Custom Lighting Servs.*, LLC, No. 07 Civ. 261S, 2007 WL 4264608, at *11 (W.D.N.Y. Nov. 30, 2007) ("[T]he question of whether [a party] failed to give notice of its claim in the appropriate manner and timeframe . . . is a matter for the arbitrator . . . "). And "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

Second, there is a "colorable justification" for the Panel's conclusion. *Phx. Bulk Carriers, Ltd.*, 2013 WL 5863608, at *5. When Petitioner submitted its Demand, the submission included the AAA "Commercial Arbitration Rules Demand for Arbitration" form, which plainly requested attorney's fees, interest, and arbitration costs, *see* 56.1 ¶ 27, and a complaint requesting attorney's fees and costs,

7

which attached the APA and the Guaranty, *id.* ¶ 28. Petitioner also "specifically requested reasonable attorney['s] fees and costs incurred to defend the arbitration pursuant to the Guaranty" in its pre-hearing memorandum, and other filings in the arbitration. Second Interim Award at 51.

The Court agrees with the Panel's finding that Respondent "had adequate notice of [Petitioner's] claim for attorney['s] fees and that such claim was asserted pursuant to the Guaranty." Second Interim Award at 52. The Court sees no reason to disturb the Panel's sound determination that the Guaranty was properly submitted in the arbitration and properly before the Panel.

### B. The Panel's Decision that the APA Does Not Limit the Guaranty

Respondent argues that the Panel "exceeded its authority" in awarding attorney's fees because § 8.5(e) of the APA precludes such fees. Resp. Opp. at 26. Petitioner responds that the Panel was correct to fully dispose of this argument after considering the patties' extensive briefing on the issue. Pet. Reply at 11, ECF No. 26. The Court agrees.

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). "This is because an arbitration panel 'derives [its] powers from the parties' agreement to forgo the legal process and submit their dispute to private dispute resolution.'" Resp. Opp. at 19–20 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010)). In awarding attorney's fees, the Panel paid close attention to the "terms" of the relevant agreements; carefully parsing the language of § 8.5(e) of the APA, and carefully construing the relationship between the APA and the Guaranty. In particular, the Panel noted that:

> [Respondent's] reliance on [§ 8.5(e)] is misplaced. Section 8.5(e) specifies the obligations of the "[p]arties" with respect to attorney['s] fees and costs. "Party" and "[p]arties," to which [§] 8.5(e) applies, are expressly defined in the APA as including only [Petitioner], the [s]eller and [Sciele Cayman], the [b]uyer and principal obligor. The obligation undertaken by the guarantor, [Sciele Pharma], was a separate contractual obligation under the Guaranty. Thus § 8.5(e) of the APA, by its terms, does not apply to the [g]uarantor.

Second Interim Award at 53.

Such a reading of the language in the APA is persuasive considering that "all rights and remedies [under the Guaranty] and under the [APA] are cumulative and not alternative," meaning that the Guaranty provided remedies in addition to those provided for or permitted under the APA. *Id.* The Panel also correctly addressed Respondent's argument that where there is an express conflict, the APA would "prevail" over an "[a]ncillary [a]greement" pursuant to § 8.2 of the APA. Resp. Opp. at 25. The Panel concluded that "the Guaranty is not one of the [a]ncillary [a]greements as defined in the APA making [§ 8.2 ] irrelevant to the Panel's analysis." Second Interim Award at 55.

"[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (internal quotation marks and citation omitted). Such a high level of deference precludes this Court from modifying or vacating the Panel's conclusion that § 8.5(e) of the APA does not limit the rights and obligations that arise under the Guaranty. This Court can safely say, however, that even if the Court applied a different, more demanding standard, the result would be the same.

C. The Panel's Decision that the Guaranty Did Not Become a Legal Nullity

The APA was signed by Sciele Pharma Cayman Ltd., while the Guaranty was executed by Sciele Pharma, Inc., its corporate parent. 56.1 ¶ 12–13, 20–21. Sciele Cayman "sold and transferred all of its assets and liability to Sciele Pharma []," which later "changed its name to Shionogi Pharma, Inc.," which then "merged with and into Shionogi." Resp. Opp. at 26. Therefore, a single entity— Shionogi—is both the principal under the APA, and the guarantor under the Guaranty. *Id.* The question before the Panel was whether these corporate transactions voided the Guaranty because by

acquiring the interests of both the debtor, Sciele Cayman, and the guarantor, Sciele Pharma,

Respondent became both debtor and guarantor, and under New York law, "a debtor cannot guarantee

its own debts." *Id.* (quoting 63 N.Y. Jur. 2d Guaranty and Suretyship § 4). The Panel determined that

Respondent's "corporate restructuring" did not void its obligations under the Guaranty. Second

Interim Award at 54. The Panel was correct in doing so.

The Panel considered Respondent's claim that "as a matter of law[,] it cannot guarantee its own

performance" and that "the Guaranty was rendered a nullity," but found that the case law cited by

Respondent was "inapposite." *Id.* at 54. As the Panel noted in its decision, none of the cases cited by

Respondent "address a corporate restructuring or acquisition, pursuant to which the guarantor, for the

first time, and at a point in time subsequent to the transaction, becomes one and the same as the

principal obligor." *Id.* Nor do any of the cases cited by Respondent address a situation, such as this

one, where the Guaranty provides for remedies additional to those available under the principal

agreement. *Id.* Given these circumstances, to hold that the bargained-for rights and obligations under

the Guaranty were extinguished by Respondent's acquisition of the rights from the original parties to

the transaction, "would lead to an unreasonable outcome depriving [Petitioner] of the benefits of the

Guaranty, which was an integral part of the transaction and offered to 'induce' [Petitioner] to enter into

the transaction and transfer its assets." Second Interim Award at 54; *see also Leslie Fay, Inc. v. Rich*,

478 F. Supp. 1109, 1117 (S.D.N.Y. 1979) ("Defendants should not be allowed to evade their personal

obligations by virtue of corporate acts that were fully within their control . . ."). The Panel, therefore,

was correct in ruling that the Guaranty had not become a legal nullity.

The Court also rejects Respondent's argument that the Panel was not authorized to rely on the

Guaranty because it is a "gateway" question. Parties to an arbitration "have not authorized arbitrators

to resolve certain 'gateway' questions , such as whether the parties have a valid arbitration agreement

at all or whether a concededly binding arbitration clause applies to a certain type of controversy."

*Lamps Plus*, 139 S. Ct. at 1416–17 (internal quotation marks and citation omitted). Respondent contends that "[w]hether the Guaranty still exists and is arbitrable is—or would have been had it been properly raised—just such a 'gateway' issue." Resp. Opp. at 28. Because Respondent failed to make such an argument during the arbitration, however, the argument is waived. *See Trustees of New York State Nurses Ass'n Pension Plan v. Cabrini Med. Ctr.*, No. 08 Civ. 6918, 2009 WL 10713121, at *5 (S.D.N.Y. Jan. 30, 2009) ("Failure to raise an issue in an arbitration proceeding waives the issue in a confirmation or enforcement proceeding." (quoting *Am. Nursing Home v. Local 144 Hotel Hosp., Nursing Home & Allied Servs. Union*, No. 89 Civ. 1704, 1992 WL 47553, at *4 (S.D.N.Y. Mar. 4, 1992)). Moreover, it appears that Respondent conceded the arbitrability of the issues of fees and costs under the Guaranty during a hearing before the Panel, further supporting this Court's decision to reject Respondent's "gateway" argument. *See* Pet. Reply at 14.

Although "there is no general requirement that arbitrators explain the reasons for their award," *Landy Michaels Realty Corp.*, 954 F.2d 797 (internal quotation marks and citation omitted), the Panel thoroughly explained why Respondent's restructuring did not make the Guaranty a nullity. Because the Guaranty was not nullified by Respondent's acquisition of Sciele Cayman and Sciele Pharma's rights under the APA and the Guaranty, the Panel's reliance on the Guaranty when awarding attorney's fees was well within its authority. Accordingly, the Award is CONFIRMED and Respondent's motion to vacate the Award is DENIED.

### D. Post-Award, Pre-Judgment Interest

Having confirmed the Panel's Award, the Court must determine whether to allow post-award, pre-judgment interest, and if so, at what rate. "Post-award, pre-judgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *Glob. Gold Mining LLC v. Caldera Res., Inc.*, No. 18 Civ. 4419, 2019 WL 367824, at *6 (S.D.N.Y. Jan. 30, 2019) (internal quotation marks and citation omitted). "[T]he common practice among courts

within the Second Circuit is to grant interest at a rate of nine percent per annum—which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001–5004—from the time of the award to the date of the judgment confirming the award." *SEIU, Local 32BJ v. Dayton Beach Park No. 1 Corp.*, No. 18 Civ. 3887, 2019 WL 120998, at *4 (S.D.N.Y. Jan. 4, 2019) (quoting *Salus Capital Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 483 (S.D.N.Y. 2018) (internal quotation marks omitted)).

The Panel was faced with a similar question after it decided that no market change had occurred and as such, Respondent owed Petitioner minimum payments under the APA. 56.1 ¶ 78. It ruled that Respondent's "obligation to make the [m]inimum [p]ayments . . . were made . . . .pursuant to the APA and not the Guaranty." Second Interim Award at 57. Consequently, the Panel determined, that the interest rate specified in the APA was applicable, rather than the 9% statutory rate. *Id.* The Award presently before the Court, is the Panel's award of attorney's fees, which arises under the Guaranty. *See* 56.1 ¶ 89. Unlike the APA, however, the Guaranty is silent with respect to the interest rate that applies to the payment of attorney's fees and costs. *See generally* Guaranty. Because the Guaranty is silent with respect to the interest rate, this Court adopts the "common practice among courts within the Second Circuit to grant interest at a rate of nine percent per annum . . . from the time of the award to the date of the judgment confirming the award." *SEIU, Local 32BJ*, 2019 WL 120998, at *4.

Accordingly, Petitioner is awarded post-award pre-judgment interest at a rate of 9 percent per annum from the date of the Panel's decision to the date of the judgment.

**CONCLUSION**

For the reasons stated above, the petition to confirm the Award is GRANTED. The Clerk of Court is directed to enter judgment in favor of Petitioner in the amount of $1,659,883 in attorney's fees and $390,103.90 in costs, plus pre-judgment interest at a rate of 9% per annum accruing from March 1, 2019, through the date of this judgment, and to close the case.

SO ORDERED.

Dated: January 27, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge